IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DONALD PENDLETON, )
)
          Plaintiff, )
)
v. ) Case No. 12-03492-CV-S-ODS-SSA
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
          Defendant. )

ORDER AND OPINION AFFIRMING
<u>COMMISSIONER'S FINAL DECISION DENYING BENEFITS</u>

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in 1966. R. 114. He received a GED and has previously worked as a carpenter, deli clerk, restaurant manager, and truck driver. R. 29, 149, 155, 160, 223. Plaintiff alleges disability beginning May 27, 2007 due to degenerative disc disease, pilonidal cyst, and depression. R. 114, 148.

On May 25, 2007, Plaintiff had an MRI scan of his back that showed multi-level loss of vertebral body height and multi-level mild degenerative disc disease with no evidence of acute compression fractures, disc herniation, or impingement. R. 232. Plaintiff saw Doyle Hill, D.O. and complained of back problems. R. 256. A musculoskeletal examination showed that Plaintiff has decreased range of motion and increased myotension. R. 256. Dr. Hill prescribed hydrocodone and skelaxin. R. 356.

On January 23, 2008, Plaintiff returned to Dr. Hill and reported that the hydrocodone was controlling his pain well. R. 255. Dr. Hill noted that Plaintiff's lower

back pain was a 4 on a 10-point scale.  R. 255.  He assessed muscle spasms and recommended that Plaintiff continue his medication regimen.  R. 255.

From February to December 2008, Plaintiff saw Dr. Hill for general health care.  R. 239, 244-54, 257-63.  On April 2, 2008, Plaintiff reported that flexeril was helping with his muscle spasms.  R. 253.  On July 22, 2008, Plaintiff reported that his low back pain "has really improved."  R. 248.  On August 19, 2008, Plaintiff reported that he was concerned about his fatigue but his back pain had improved since losing weight.  R. 247.  A musculoskeletal examination revealed decreased range of motion, increased myotension, spasm, and complaints of pain.  R. 247.  Dr. Hill diagnosed Plaintiff with muscle spasms, degenerative disc disease of the lumbar spine, obesity, and fatigue.  R. 247.  He proscribed flexeril and hydrocodone for Plaintiff's pain and phentermine to help Plaintiff lose weight.  R. 247.

On November 11, 2008, Dr. Hill examined Plaintiff in connection with his application for a Class "A" commercial driver's license.  R. 241.  Plaintiff did not report any health problems and specifically denied chronic low back pain and spinal injury or disease.  R. 241.  Dr. Hill completed the physical examination portion of the application and indicated that Plaintiff did not have any spinal or musculoskeletal problems.  R. 243.  That very same day, Dr. Hill diagnosed Plaintiff with low back pain and degenerative disc disease of the lumbar spine.  R. 244.

Plaintiff went to the Good Samaritan Care Clinic between September 2008 and January 2010 with complaints of back pain and depression.  R. 268-81.  Plaintiff received Prozac for his depression and reported that his symptoms did not improve.  R. 270.  On April 6, 2009, the examining physician noted that Plaintiff had chronic back pain and degenerative disc disease, but was taken off of his pain medication due to a hydrocodone abuse.  R. 276.  On December 28, 2009, Plaintiff rated his back pain at a 7 on a 10-point scale.  R. 270.  Plaintiff requested hydrocodone, but was prescribed other medication.  R. 269-70.  On January 25, 2010, Plaintiff complained of back pain and requested "something stronger than Ultram" and received a trial of depo-medrol.  R. 281.

On February 1, 2010, Plaintiff underwent a psychological evaluation at Behavioral Health Care.  R. 346-50.  Plaintiff reported a history of depression, anxiety,

anger issues, and problems getting along with others. R. 246. Plaintiff also reported a history of addiction with hydrocodone and that he lost his job because of it. R. 246. A mental status exam revealed that Plaintiff had an anxious mood, restless motor activity, intact memory, fair attention/concentration, intact judgment/insight, and an average intellect. R. 348-49. The examining mental health provider diagnosed Plaintiff with bipolar disorder, generalized anxiety disorder, alcohol dependence in early full remission, and opioid dependence in sustained full remission. R. 349.

Thomas Spencer, Psy. D., examined Plaintiff on February 17, 2010, at the request of the Missouri Department of Social Services—Family Support Division. R. 291-95. Plaintiff reported a history of depression, anxiety, and anger issues. R. 291. He reported taking celexa for about a month and experienced "measurable improvement." R. 291. Dr. Spencer diagnosed Plaintiff with mood disorder, alcohol dependence in early remission, and bipolar disorder. R. 295. Dr. Spencer opined that Plaintiff had a mental disability that would likely exceed 12 months and even with treatment, compliance, and sobriety, prognosis is thought to be guarded. R. 295.

On March 1, 2010, Plaintiff visited the Good Samaritan Care Clinic. R. 298-99. Plaintiff complained of chronic back pain, depression, and anger issues. R. 299. Plaintiff reported that his ultram was not working but that he "got some improvement [with] Flexeril." R. 299. Plaintiff requested hydrocodone, but was prescribed flexeril and cymbalta. R. 299.

On April 5, 2010, went to individual therapy and reported the following symptoms: anxiety, fearfulness, muscle tension, irritability, impatience, depression, difficulty and remembering things. R. 344. Plaintiff's counselor assigned a GAF score of 34-37. R. 345. Plaintiff attended several other therapy sessions. R. 332-33, 338-39, 368-69, 372-73, 376-77, 380-81, 411-29.

On April 13, 2010, Steven Akeson, Psy.D., completed a psychiatric review technique form after reviewing Plaintiff's medical records. R. 317-28. Dr. Akeson acknowledged that Plaintiff had been diagnosed with anxiety, depression, mood disorder not otherwise specified, and alcohol dependence in early remission. R. 317, 320-32, 323. He also found that Plaintiff had mild limitations in restrictions of activities of daily living, and mild limitations in difficulties in maintaining concentration,

3

persistence, or pace. R. 325. Dr. Akeson found that Plaintiff had moderate difficulties in maintaining social functioning. R. 325.

Dr. Akeson completed a mental residual functional capacity assessment form. R. 314-16. He opined that Plaintiff was not significantly limited in 17 of 20 functional areas. R. 314-15. He found that Plaintiff was moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; and the ability to interact appropriately with the general public. R. 314-15. Dr. Akeson concluded that Plaintiff "retains the capacity to acquire and retain at least simple instructions and sustain [concentration, persistence, or pace with] at least simple, repetitive tasks." R. 316. He also found that Plaintiff "can relate adequately to others in settings which do not require frequent public contact or unusually close interaction" and that Plaintiff "can adapt to changes in non-complex work environments." R. 316.

On April 14, 2010, Plaintiff went to the Mt. Grove Clinic complaining of back pain, depression, and anxiety. R. 352. Plaintiff reported that his thoracic pain was constant, sharp and a 7 on a 10-point scale. R. 352. A physical examination revealed that Plaintiff appeared alert and oriented, and was in no acute distress. R. 353. Plaintiff's gait and station was normal, he had adequate muscle strength and tone, and normal range of motion to neck and extremities. R. 354. Plaintiff experienced mild pain to back palpitations and mildly decreased range of motion. R. 354. An MRI scan of Plaintiff's back revealed compression fractures, disc bulging, and disc protrusion in his thoracic spine, but his lumbar spine was normal. R. 358-60.

Plaintiff received mental health care from Richard Aiken, M.D., between May and November 2010. R. 334-37, 340-42, 370-71, 374-75, 378-79. In June 2010, Plaintiff noted that he "feels the most normal that he has in many years" and that he was doing "much better." R. 336. In July 2010, Plaintiff reported that he was not doing as well as before but that he had not taken his abilify medication for almost a month. R. 334. In August 2010, Plaintiff reported that he had stopped taking his medication for two weeks and that he did not do well during those two weeks. R. 378. In September 2010, Dr. Aiken noted that Plaintiff was doing "rather well." R. 374. In November 2010, Dr. Aiken reported that Plaintiff was doing "very well." R. 370. Dr. Aiken noted that Plaintiff

4

indicated he wanted to work again but had a worker's compensation case pending. R. 370.

On December 7, 2010, Plaintiff saw K. Douglas Green, M.D., for a new patient initial consultation. R. 362. Plaintiff had some palpitation in his thoracic spine, but his lumbar spine was unremarkable and he had negative straight leg raises. R. 364. He had normal strength, intact cranial nerves, normal reflexes, normal gait, and performed orthopedic maneuvers such as heel and toe walking without difficulty. R. 364-65. An x-ray of Plaintiff's back revealed abnormal alignment and a compression fracture. R. 365.

Plaintiff continued to go to the Mountain Grove Medical Complex for his back pain until December 2010. R. 382-409. In February 2011, Plaintiff received an epidural steroid injection. R. 435-36. Plaintiff reported having two or three weeks of relief as a result of the procedure. R. 433.

Plaintiff followed-up with his therapist, Jennifer Whitaker, APRN, on April 14, 2011, and reported that he was doing "quite well." R. 413. Ms. Whitaker reported that Plaintiff was sleeping well, eating healthy, was in a good mood. R. 413. Plaintiff reported that "his level of energy is better than normal for him." And that he is "[a]ble to enjoy life a little bit." R. 413.

An administrative hearing was held on June 15, 2011. At the hearing, Plaintiff testified that he received unemployment benefits until 2010. R. 31. He continued to look for a job during this time but said he had a hard time because of his criminal record. R. 31. Plaintiff testified he could not hold a job because he would argue with coworkers. R. 31. He stated that his medications have "made the world of difference" in controlling his anger issues. R. 33. However, while still on medication, Plaintiff testified that he still experiences depression and anxiety. R. 36. Plaintiff does some household chores including dishes and laundry, but sometimes needs to take a break when he is cleaning dishes. R. 37.

At step one of the five-step sequential process, the administrative law judge ("ALJ") determined Plaintiff had engaged in substantial gainful activity from May 27, 2007 through May 13, 2009. R. 12. The ALJ found that there had been a continuous 12-month period during which Plaintiff did not engage in gainful activity. R. 13. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc

disease; bipolar disorder, and obesity. R. 13. At step three, the ALJ determined Plaintiff does not have a listed impairment. R. 13. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can only occasionally climb stairs, ramps, but never climb ropes, ladders, and scaffolds. The claimant is limited to frequent reaching in all directions, including overhead. The claimant should avoid concentrated exposure to unprotected heights, excessive vibration, and hazardous machinery. The claimant is limited to unskilled work only, which requires no more than occasional contact with the public and co-workers.

R. 15. Next, the ALJ found, based on the vocational expert's testimony, that Plaintiff is unable to perform any past relevant work, but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including folding machine operator, photo copy machine operator, and collator operator. R. 20. Finally, the ALJ concluded Plaintiff is not disabled. R. 20.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

III. DISCUSSION

A. The ALJ Properly Analyzed Plaintiff's Credibility

Plaintiff argues the ALJ improperly analyzed his credibility. The Court disagrees. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). In evaluating a claimant's subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; (7) the absence of objective medical evidence to support the claimant's complaints. *Id.*

Here, there is substantial evidence in the Record to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. The ALJ pointed out that Plaintiff testified that his back was in "continuous" pain which had "not improved" at all. R. 16, 34. However, the record shows that Plaintiff's degenerative disc disease was controlled with treatment and medication. R. 18. Plaintiff reported that hydrocodone controlled his pain well and that his low back pain "really improved." R. 247-48, 255. Plaintiff also reported that his back pain improved after some losing weight. R. 247. Next, the ALJ properly found that Plaintiff's conservative medical treatment undermined his claim. R. 16. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (ALJ could find that the claimant's conservative treatment was not indicative of disabling symptoms). In terms of Plaintiff's mental health, the record shows that Plaintiff reported feeling "very well" in November 2010. A month before the hearing, Plaintiff told his therapist that he was doing "quite well" and also reported being in a good mood, sleeping well, eating healthy, and having better

energy and generally "enjoying life." R. 413. The Court finds there is substantial evidence in the Record to support the ALJ's decision to discount Plaintiff's credibility.

### B. The ALJ Properly Weighed the Medical Opinion Evidence

Next, Plaintiff argues the ALJ improperly evaluated the medical opinion evidence when evaluating Plaintiff's RFC. Specifically, he contends the ALJ erred by giving more weight to Dr. Akeson's examining opinion than Dr. Spencer's examining opinion. The Court concludes that there is substantial evidence in the record to support the ALJ's RFC assessment.

Here, the ALJ afforded great weight to Dr. Akeson's opinion after finding it was consistent with the record as a whole. R. 18. Dr. Akeson opined that Plaintiff had a combination of mental impairments that caused mild restrictions in activities of daily living, moderate difficulties in social functioning, and mild limitations in concentration, persistence and pace. R. 314-16. The ALJ properly found that this opinion was consistent with the substantial medical evidence of record. For example, Plaintiff's function report indicated he read books on his laptop, prepared simple meals, shopped for groceries, drove, and attended to his personal care. R. 18, 196-99, 325. Next, Dr. Akeson noted that Plaintiff experienced significant improvement in his mental condition with medication. R. 18, 33, 291. As to concentration, persistence, and pace, the ALJ noted that Plaintiff can follow directions and likes changes in routine. R. 18, 293-94, 325.

In contrast, the ALJ determined that Dr. Spencer's opinion—that Plaintiff has a mental illness that interferes with his ability to engage in employment—was not consistent with the record as a whole. R. 18, 291-95. The reasons cited by the ALJ for assigning minimal weight to Dr. Spencer's opinion are supported by substantial evidence in the record. First, Dr. Spencer's opinion was inconsistent with his own examination findings. *See Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) (ALJ properly discounted a physician's medical opinion that was inconsistent with the physician's clinical treatment notes). For example, Dr. Spencer observed that Plaintiff's attention, concentration, and fund of information were intact and that Plaintiff appeared

adequately groomed, alert, oriented, and cooperative during the session. R. 18, 293-95. Dr. Spencer also noted that Plaintiff was able to interpret proverbs and make simple calculations without error. R. 18, 293-95. Second, the ALJ noted that Dr. Spencer heavily relied on Plaintiff's subjective report of symptoms and limitations. As previously discussed, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible.

### C. Plaintiff's Remaining Arguments

The Court rejects Plaintiffs' final arguments that (1) Plaintiff has greater mental and physical limitations than listed in the RFC; (2) the ALJ did not rely on a medical opinion from a state agency or an examining physician; and (3) the ALJ did not discuss some of the "important medical findings."

First, with regard to Plaintiff's mental limitations, Plaintiff argues the ALJ should have included greater restrictions to account for his problems getting along with others and maintaining concentration. There is substantial evidence in the record to show that Plaintiff's condition improved with medication and controlled his anger problems. R. 14, 33, 291, 299, 336, 370, 374, 413, 417, 419, 428. Plaintiff also argues the ALJ did not account for his difficulty maintaining concentration and staying on task. This argument lacks merit as the record revealed that Plaintiff had intact attention, concentration, and a fund of information. R. 294, 314-15. As to Plaintiff's physical limitations, Plaintiff failed to identify any specific restrictions or limitations that the ALJ did not account for in his RFC finding. The ALJ acknowledged that Plaintiff has a severe back impairment, but determined that the objective medical evidence showed that Plaintiff had normal gait and station, adequate muscle strength and tone, normal range of motion in his extremities, intact cranial nerves, no sensory deficits, normal reflexes, negative straight leg raises, and the ability to perform orthopedic maneuvers such as heel and toe walking. R. 353, 364-65, 437.

The Court also rejects Plaintiff's argument that the ALJ erred by not relying on a medical opinion from a state agency or examining physician. An ALJ is not required to

9

base his RFC finding on a specific medical opinion. Instead, the ALJ is responsible for basing Plaintiff's RFC on *all* the relevant evidence. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).

Finally, with respect to Plaintiff's argument that the ALJ did not discuss the "important medical findings," the ALJ spent a substantial amount of time in his opinion discussing the medical evidence. R. 15-18. Further, an ALJ is not required to discuss every single piece of the evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Moreover, as Defendant points out, Plaintiff failed to explain which objective medical findings the ALJ should have included in his decision. Pl's Br. at 13.

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 12, 2014  UNITED STATES DISTRICT COURT